## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| 85 Second Street, 2nd Floor | ) | |
| San Francisco, CA 94105, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Civil Action No. 1:11-cv-00071** |
| CITY OF HOLLAND, MICHIGAN | ) | Paul L. Maloney |
| 270 S. River Ave, | ) | Chief U.S. District Judge |
| Holland, MI 49423, and | ) | |
| | ) | |
| HOLLAND BOARD OF PUBLIC WORKS | ) | |
| 625 Hastings Avenue | ) | |
| Holland, MI 49423 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## DEFENDANT CITY OF HOLLAND, MICHIGAN AND HOLLAND BOARD OF PUBLIC WORKS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF SIERRA CLUB'S AMENDED COMPLAINT

---

Defendants City of Holland, Michigan ("City of Holland") and Holland Board of Public Works ("HBPW") (collectively "Defendants"), by their undersigned counsel, hereby respond to the Complaint of Plaintiff Sierra Club as follows:

### INTRODUCTION

1.      This is a civil action for civil penalties, declaratory and injunctive relief, with costs and fees, under the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7401, *et seq.* and the federally-enforceable Michigan State Implementation Plan.

**ANSWER**:      The allegations in Paragraph 1 are Plaintiff's characterization of this matter and therefore require no answer.  To the extent that they do require an answer, Defendants

admit that the Complaint makes allegations under the Clean Air Act (the "Act" or "CAA") and

requests various civil remedies, and deny the remaining allegations contained in Paragraph 1.

2.      Sierra Club seeks an order requiring the Defendants, the City of Holland,
Michigan and the Holland Board of Public Works, to comply with the requirements of the Act
and the Michigan State Implementation Plan at the James De Young Generation Station (the De
Young Plant), to forfeit penalties for violations of the CAA at the De Young Plant, and to
mitigate past illegal emissions.

**ANSWER**:     The allegations in Paragraph 2 are Plaintiff's characterization of this

matter and therefore require no answer.  To the extent that they do require an answer, Defendants

admit that the Complaint makes allegations under the Act and requests various civil remedies,

and deny the remaining allegations contained in Paragraph 2.

3.      The De Young Plant is a coal- and natural gas-fired power plant that emits
thousands of tons of carbon dioxide, nitrogen oxides and sulfur oxides every year as well as
significant amounts of particulate matter, carbon monoxide, mercury, and other hazardous air
pollutants.  Those pollutants contribute to climate change, respiratory distress, cardiovascular
disease, and premature mortality.  Nitrogen oxides and sulfur oxides in the air also contribute to
acid rain, which sterilizes lakes and damages property.  The presence of those pollutants in the
atmosphere is associated with increased hospital admissions and emergency room visits.

**ANSWER**:     For its answer to Paragraph 3, Defendants state that Paragraph 3 is

ambiguous as to the phrase "significant amounts of particulate matter, carbon monoxide,

mercury, and other hazardous air pollutants," and, therefore, Defendants are unable to admit or

deny those allegations.  Defendants admit that the De Young Plant is a coal-fired power plant

that lawfully emits compounds subject to regulation under the Act.  Defendants further admit

that the units at the De Young Plant use natural gas as an ignition fuel, and that Units 4 and 5

have some natural gas capability.  Defendants lack knowledge and information sufficient to form

a belief as to the truth of the remaining allegations in Paragraph 3 and therefore deny them.

**PARTIES**

4.      Plaintiff Sierra Club is an incorporated, not-for-profit organization with its
headquarters at 85 Second Street, 2nd Floor, San Francisco, California and its Michigan Chapter
Office at 109 E. Grand River Avenue, Lansing, Michigan.  Its purpose is to preserve, protect, and

enhance the natural environment. Its mission includes reducing and eliminating pollution from the mining, combustion, and waste disposal of coal, which negatively affects Sierra Club's members as well as members of the public. Sierra Club has over 1.3 million members and supporters nationwide, including approximately 18,000 members in Michigan.

**ANSWER**:    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore deny them.

5.    Defendant City of Holland is a municipality in the State of Michigan that owns the De Young Plant.

**ANSWER**:    Admit.

6.    Defendant Holland Board of Public Works is a division of the City of Holland that provides utility services to the Holland area and operates the De Young Plant.

**ANSWER**:    Deny.

7.    Defendant City of Holland, Michigan is a "person" within the meaning of Sections 302(e) and 304(a)(3) of the Act, 42 U.S.C. §§ 7602(e), 7604(a)(1) and (a)(3).

**ANSWER**:    The allegations in Paragraph 7 call for a legal conclusion and therefore require no answer. To the extent an answer is required, the City of Holland admits the allegations in Paragraph 7.

8.    Defendant Holland Board of Public Works is a "person" within the meaning of Sections 302(e) and 304(a)(3) of the Act, 42 U.S.C. §§ 7602(e), 7604(a)(1) and (a)(3).

**ANSWER**:    The allegations in Paragraph 8 call for a legal conclusion and therefore require no answer. To the extent an answer is required, the HBPW denies the allegations in Paragraph 8.

## STANDING

9.    Sierra Club has members who live, work, and recreate in and around the City of Holland and Ottawa County, Michigan, as well as other areas downwind from the De Young Plant. These members are negatively impacted by air pollution emissions from the De Young Plant. The health and welfare of Sierra Club's members, as well as their enjoyment of outdoor activities, has been and continues to be harmed by air pollution from the De Young Plant.

**ANSWER**:    Defendants admit the first sentence in Paragraph 9 and deny the remaining

allegations.

10.    An order of this Court enjoining Defendants from operating the De Young Plant,
requiring Defendants to comply with applicable emission limitations at the De Young Plant,
and/or mitigating past illegal emissions will begin to redress the injuries to Sierra Club's
members because the result will be a reduction in air pollution from the plant.

**ANSWER**:    The allegations in Paragraph 10 call for a legal conclusion and therefore

require no answer.  To the extent that they do require an answer, Defendants deny the allegations

in Paragraph 10.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over the claims set forth in this
complaint pursuant to 42 U.S.C. § 7604, 28 U.S.C. §§ 1331, 1355, and 2201.  The relief
requested by the Plaintiff is authorized by statute in 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C.
§ 7604.

**ANSWER**:    The allegations in Paragraph 11 call for a legal conclusion and therefore

require no answer.  To the extent an answer is required, Defendants deny the allegations in

Paragraph 11.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the
Defendants reside in, and all or a substantial part of the events or omissions giving rise to the
claims herein occurred in the Western District of Michigan.  Venue is also proper pursuant to 42
U.S.C. § 7604(c)(1) because this action is for violations at the De Young Plant, which is located
within the Western District of Michigan.

**ANSWER**:    Defendants admit that venue is proper in this District.  Defendants deny

that there have been violations as alleged by Plaintiff at the De Young Plant.

## NOTICE

13.    On September 9, 2010, Sierra Club provided notice to the Defendants, the State of
Michigan, and the United States Environmental Protection Agency (EPA) Administrator via
certified mail of those claims in this Amended Complaint for which notice is required in
accordance with the requirements of CAA Section 304(b), 42 U.S.C. § 7604(b) and 40 C.F.R.
part 54.

**ANSWER**:     Defendants admit receipt of a letter from the Sierra Club but deny receipt

of adequate notice under the Act**.**  Defendants lack knowledge and information sufficient to form

a belief as to the truth of the remaining allegations in Paragraph 13 and therefore deny them.

14.     On February 10, 2011, Sierra Club provided supplemental notice to the
Defendants, the State of Michigan, and the EPA via certified mail of additional alleged violations
in accordance with the requirements of CAA Section 304(b), 42 U.S.C. § 7604(b) and 40 C.F.R.
part 54.

**ANSWER**:     Defendants admit receipt of a letter from the Sierra Club but deny receipt

of adequate notice under the Act**.**  Defendants lack knowledge and information sufficient to form

a belief as to the truth of the remaining allegations in Paragraph 14 and therefore deny them.

## GENERAL ALLEGATIONS

### The De Young Plant

15.     Defendants are government entities who own and are responsible for the
operations of the De Young Plant.

**ANSWER**:     Admit.

16.     The De Young Plant consists of three coal- and natural gas-fired electrical
generating boilers, turbine generators, coal handling equipment, and associated equipment
known as Units 3, 4 and 5.  These three units have the capability of generating a total of 60
megawatts ("MW") of electricity.

**ANSWER**:     Defendants admit that, among other equipment, the De Young Plant

includes three coal-fired boilers.  Defendants further admit that the units at the De Young Plant

use natural gas as an ignition fuel, and that Units 4 and 5 have some natural gas capability.

Defendants further admit that the total rated capacity of these three boilers is approximately 60

megawatts.  Defendants deny the remaining allegations in Paragraph 16.

17.     Boiler 3 began initial operation in or around 1950 and serves a generator rated at a
capacity of approximately 11.5 MW.

**ANSWER**:    Defendants admit that, according to the nameplate on the unit,  Unit 3 was installed in 1953, and has a rated capacity of approximately 11.50 MW.  Defendants deny the remaining allegations in Paragraph 17.

18.    Boiler 4 began initial operation in or around 1960 and serves a generator rated at a capacity of approximately 19 MW.

**ANSWER**:    Defendants admit that, according to the nameplate on the unit, Unit 4 was installed in 1961 and has a rated capacity of 22.00 MW.  Defendants deny the remaining allegations in Paragraph 18.

19.    Boiler 5 began initial operation in 1967 and serves a generator rated at a capacity of approximately 29.5 MW.

**ANSWER**:    Defendants admit that, according to the nameplate on the unit, Unit 5 was installed in 1968 and has a rated capacity of 28.75 MW.  Defendants deny the remaining allegations in Paragraph 19.

20.    Coal is the predominant fuel for all three boilers at the De Young Plant.

**ANSWER**:    Admit.

21.    The De Young Plant is located at 64 Pine Avenue, Holland, Ottawa County, Michigan.

**ANSWER**:    Admit.

## The Clean Air Act

22.    The Clean Air Act requires that the EPA promulgate National Ambient Air Quality Standards (NAAQS), which are upper limits on air pollution in the ambient air, to protect public health and welfare with an adequate margin of safety, 42 U.S.C. § 7409.

**ANSWER**:    The allegations in Paragraph 22 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that the CAA requires that the EPA promulgate NAAQS, state that the statute speaks for itself, and deny the remaining allegations in Paragraph 22.

23.     CAA Section 110, 42 U.S.C. § 7410, requires each state to adopt and to submit to EPA for approval a State Implementation Plan (SIP) that provides for the attainment and maintenance of the NAAQS.  SIP requirements are federally enforceable in citizen suits under CAA Section 304(a)(1), 42 U.S.C. § 7604(a)(1).

**ANSWER**:     The allegations in Paragraph 23 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that the CAA contains provisions related to SIPs, state that the statute speaks for itself, and deny the remaining allegations in Paragraph 23.

24.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources."  The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Clean Air Act are collected in one place and that sufficient compliance testing and reporting occur.

**ANSWER**:     The allegations in Paragraph 24 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that Title V of the CAA contains provisions related to a permit program, state that the statute speaks for itself, and deny the remaining allegations in Paragraph 24.

25.     EPA promulgated regulations establishing minimum elements of a Title V permit program to be administered by an air pollution control agency.  57 Fed. Reg. 32,250 (July 21, 1992).  Those regulations are codified at 40 C.F.R. part 70.

**ANSWER**:     The allegations in Paragraph 25 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that Title V of the CAA contains provisions related to a permit program, state that the statute and the regulations speak for themselves, and deny the remaining allegations in Paragraph 25.

26.     EPA granted interim approval of the State of Michigan's Title V operating permit program effective on February 10, 1997.  EPA granted final approval effective on November 30, 2001.  40 C.F.R. Part 70, Appendix A.  Michigan's Title V operating permit program is codified at Mich. Admin. Code r. 336.1210-336.1218 ("Rule 210-218").

**ANSWER**:     The allegations in Paragraph 26 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants state that the regulations speak for themselves, and deny the remaining allegations in Paragraph 26.

27.     The Act and Michigan's Title V operating permit program have, at all relevant times, made it unlawful for any person to violate any requirement of a permit issued under Title V, or to operate a major source except in compliance with a Title V permit.  42 U.S.C. § 7661a; 40 C.F.R. § 70.7(b); Michigan Rule 336.1210(1).

**ANSWER**:     The allegations in Paragraph 27 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that Title V of the CAA contains provisions related to a permit program, state that the statute and the rules speak for themselves, and deny the remaining allegations in Paragraph 27.

28.     The Act and Michigan's Title V operating permit program have, at all relevant times, required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Act and the requirements of the applicable SIP.  42 U.S.C. § 766 lc(a); 40 C.F.R. § 70.6(a)(1) and Michigan's Rule 213.

**ANSWER**:     The allegations in Paragraph 28 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that Title V of the CAA contains provisions related to a permit program, state that the statute and the rules speak for themselves, and deny the remaining allegations in Paragraph 28.

29.     Rule 213 in Michigan's Title V operating permit regulations further specify that all terms and conditions of a Title V operating permit that are designated in the permit as federally enforceable are enforceable by citizens under the provisions of the Clean Air Act.

ANSWER:     The allegations in Paragraph 29 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants state that the statute and the rules speak for themselves, and deny the remaining allegations in Paragraph 29.

**Limits on the De Young Plant's Visible Emissions**

30.     The James De Young plant is subject to limits on visible air pollutant emissions from its stacks.

**ANSWER**:    The allegations in Paragraph 30 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that the De Young plant is subject to certain limits on visible air pollutant emissions, state that any statutes, regulations, or rules related to limits on visible air pollutant emissions speak for themselves, and deny the remaining allegations in Paragraph 30.

31.    Permit No. MI-ROP-B2357-2006a §§ 1.A.11 and 1.C.EU Unit-3.I and Michigan Rule 336.1301(1) limit the emissions from James De Young Unit 3 to 20 percent opacity based on a 6-minute average, except for one 6-minute period per hour, which can be no greater than 27 percent opacity.

**ANSWER**:    The allegations in Paragraph 31 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that the De Young Plant operates under a Renewable Operating Permit ("ROP") issued by the State of Michigan and that Michigan Rule 336.1301 contains provisions related to opacity, state that the ROP and the rules speak for themselves, and deny the remaining allegations in Paragraph 31.

32.    Permit No. MI-ROP-B2357-2006a §§ 1.A.11 and 1.C.EU Unit-4.I and Michigan Rule 336.1301(1) limit emissions from James De Young Unit 4 to 20 percent opacity based on a 6-minute average, except for one 6-minute period per hour, which can be no greater than 27 percent opacity.

**ANSWER**:    The allegations in Paragraph 32 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that the De Young Plant operates under a Renewable Operating Permit ("ROP") issued by the State of Michigan and that Michigan Rule 336.1301 contains provisions related to opacity, state that the ROP and the rules speak for themselves, and deny the remaining allegations in Paragraph 32.

33.    Permit No. MI-ROP-B2357-2006a § 1.A.11 and 1.C.EU Unit-5.I and Michigan Rule 336.1301(1) limit emissions from James De Young Unit 5 to 20 percent opacity based on a 6-minute average, except for one 6-minute period per hour, which can be no greater than 27 percent opacity.

**ANSWER**:     The allegations in Paragraph 33 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that the De Young Plant operates under a Renewable Operating Permit ("ROP") issued by the State of Michigan and that Michigan Rule 336.1301 contains provisions related to opacity, state that the ROP and the rules speak for themselves, and deny the remaining allegations in Paragraph 33.

34.     The Defendants have reported to the Michigan Department of Environmental Quality and the Michigan Department of Natural Resources and Environment periods of time when emissions from the James De Young plant have violated the applicable limits, including the limits on visible emissions.

**ANSWER**:     The allegations in Paragraph 34 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that it provides and has provided reports to the Michigan Department of Environmental Quality and the Michigan Department of Natural Resources and Environment related to emissions from the De Young Plant, state that those reports speak for themselves, and deny the remaining allegations in Paragraph 34.

35.     According to the reports submitted by Defendants to the State of Michigan, the James De Young plant has violated its permitted visible emission limits on hundreds of occasions in recent years.  For example, since January 1, 2005, the De Young plant emitted visible emissions in excess of 20 percent opacity for more than sixty (60) hours, consisting of more than six hundred (600) discrete 6-minute periods.

**ANSWER**:     The allegations in Paragraph 35 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants state that any reports submitted by the City of Holland to the State of Michigan speak for themselves, and deny the allegations in Paragraph 35.

36.     Permits issued to Defendants, including Permit No. MI-ROP-B2357-2006a, and Michigan Rule 336.2101, require Defendants to continuously monitor visible emissions from the James De Young plant.

**ANSWER**:     The allegations in Paragraph 36 call for a legal conclusion and therefore

require no answer.  To the extent that they do require an answer, Defendants admit that the De

Young Plant operates under an ROP issued by the State of Michigan and that Michigan Rule

336.2101 contains provisions related to continuous emissions monitoring, state that the ROP and

the rules speak for themselves, and deny the remaining allegations in Paragraph 36.

37.     On numerous occasions, Defendants have not continuously monitored visible
emissions from the James De Young plant, in violation of permit requirements and requirements
of applicable Michigan rules.

**ANSWER**:     The allegations in Paragraph 37 call for a legal conclusion and therefore

require no answer.  To the extent that they do require an answer, Defendants deny the allegations

in Paragraph 37.

## Operating Requirements at the De Young Plant

38. Defendants have installed a pollution control device known as an "electrostatic
precipitator" at each of the three coal-fired boilers at the De Young Plant. Electrostatic
precipitators work by ionizing particles in the boiler exhaust gases with electrodes (i.e., giving
particles a static electrical charge). Plates within the device are then given an opposite electrical
charge to the particles, so that the particles are attracted to and collected by the plates. Rapping
mechanisms are then used on the plates to clear the collected particles.

**ANSWER**:     Admit.

39. According to Defendants' applications filed with the State of Michigan, the
electrostatic precipitators on De Young units 3 and 5 were constructed in 1982 and the
electrostatic precipitator on De Young unit 4 was constructed in 1977.

**ANSWER**:     Defendants do not know to which applications Paragraph 39 refers.

Defendants lack knowledge and information sufficient to form a belief as to the truth of the

allegations in Paragraph 39 and therefore deny them.

40. The Michigan SIP requires all air cleaning devices be maintained and operated in a
satisfactory manner at all times. Michigan Rule 336.1910.

**ANSWER**:     The allegations in Paragraph 40 call for a legal conclusion and therefore

require no answer.  To the extent that they do require an answer, Defendants state that Michigan

Rule 336.1910 contains provisions related to air cleaning devices and that the rules speak for themselves, and deny the remaining allegations in Paragraph 40.

41. The electrostatic precipitators installed at the De Young Plant are "air cleaning devices" as that term is used in Michigan Rule 336.1910.

**ANSWER**:    The allegations in Paragraph 41 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants state that Michigan Rule 336.1910 contains provisions related to air cleaning devices and that the rules speak for themselves, and admit the remaining allegations in Paragraph 41.

42. Permit No. MI-ROP-B2357-2006a, at pages 20, 24, and 28, prohibits the De Young Plant from operating the boilers of Units 3, 4, and 5 (respectively) "unless the electrostatic precipitators are installed and operating properly, in accordance with safe operating practices."

**ANSWER**:    The allegations in Paragraph 42 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants admit that the De Young Plant ROP issued by the State of Michigan contains the above-quoted language, state that the ROP and the rules speak for themselves, and deny the remaining allegations in Paragraph 42.

43. On numerous occasions, Defendants have operated the boilers at Units 3, 4, and 5 at the De Young Plant during times when the electrostatic precipitators were not installed and operating properly.

**ANSWER**:    The allegations in Paragraph 43 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 43.

## FIRST CLAIM FOR RELIEF
### (Emitting Visible Emissions in Violation of Permit MI-ROP-B2357-2006a)

44.     Paragraphs 1 through 43 are realleged and incorporated herein by reference.

**ANSWER**:    Defendants incorporate their answers to Paragraphs 1 through 43 as and for their answer to the allegations in Paragraph 44.

45.     At various times, Defendants emitted visible emissions from the stack of the James De Young plant at rates and concentrations that violated the limits set forth in Permit MI-ROP-B2357-2006a.

**ANSWER**:     The allegations in Paragraph 45 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 45.

46.     Each 6-minute period during which visible emissions exceeded the applicable limit for each James De Young unit constitutes a separate and distinct violation.  42 U.S.C. § 7661a; Mich. Admin. Code r. 336.1210.

**ANSWER**:     The allegations in Paragraph 46 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 46.

47.     These violations entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

**ANSWER**:     The allegations in Paragraph 47 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 47.

**SECOND CLAIM FOR RELIEF**
(Emitting Visible Emissions in Violation of the Michigan SIP)

48.     Paragraphs 1 through 43 are realleged and incorporated herein by reference.

**ANSWER**:     Defendants incorporate their answers to Paragraphs 1 through 43 as and for their answer to the allegations in Paragraph 48.

49.     At various times, Defendants emitted visible emissions from the stack of the James De Young plant at rates and concentrations that violated the limits set forth in Michigan Rule 336.1301.

**ANSWER**:     The allegations in Paragraph 49 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 49.

50.     Michigan Rule 336.1301 is incorporated into the Michigan SIP. *See* 57 Fed. Reg. 24,752 (June 11, 1992).

**ANSWER**:     The allegations in Paragraph 50 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 50.

51.     Each 6-minute period during which visible emissions exceeded the applicable limit for each James De Young unit constitutes a separate and distinct violation of Michigan Rule 336.1301 and the Michigan State Implementation Plan.

**ANSWER**:     The allegations in Paragraph 51 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 51.

52.     These violations entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

**ANSWER**:     The allegations in Paragraph 52 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 52.

### THIRD CLAIM FOR RELIEF
(Failure to operate electrostatic precipitators as required by Permit MI-ROP-B2357-2006a)

53. Paragraphs 1 through 43 are realleged and incorporated herein by reference.

**ANSWER**:     Defendants incorporate their answers to Paragraphs 1 through 43 as and for their answer to the allegations in Paragraph 53.

54. At various times, Defendants operated the boiler at Unit 3, 4, or 5 at the De Young Plant while the electrostatic precipitators used to control particulate matter emissions at those units were not installed and operating properly in accordance with safe operating practices.

**ANSWER**:     The allegations in Paragraph 54 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 54.

55. On each occasion that Defendants operated the boiler at Unit 3, 4, or 5 while the electrostatic precipitator was not "installed and operating properly," Defendants committed a separate and distinct violation of Permit MI-ROP-B2357-2006a and the Clean Air Act.

**ANSWER**:    The allegations in Paragraph 55 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 55.

56. These violations entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

**ANSWER**:    The allegations in Paragraph 56 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 56.

**FOURTH CLAIM FOR RELIEF**
(Failure to operate air-cleaning devices as required by the Michigan SIP)

57. Paragraphs 1 through 43 are realleged and incorporated herein by reference.

**ANSWER**:    Defendants incorporate their answers to Paragraphs 1 through 43 as and for their answer to the allegations in Paragraph 57.

58. At various times, the air-cleaning devices installed at Units 3, 4, and 5 of the De Young Plant were not installed, maintained, and operated in a satisfactory manner as required by Michigan Rule 336.1910.

**ANSWER**:    The allegations in Paragraph 58 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 58.

59. Michigan Rule 336.1910 is incorporated into the Michigan SIP.

**ANSWER**:    The allegations in Paragraph 59 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 59.

60. On each occasion that Defendants operated the boiler at Unit 3, 4, or 5 while an air-cleaning device was not installed, maintained, and operated in a satisfactory manner, Defendants committed a separate and distinct violation of the Michigan SIP and the Clean Air Act.

**ANSWER**:     The allegations in Paragraph 60 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 60.

61. These violations entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

**ANSWER**:     The allegations in Paragraph 61 call for a legal conclusion and therefore require no answer.  To the extent that they do require an answer, Defendants deny the allegations in Paragraph 61.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sierra Club respectfully prays for this Court to:

A.     Declare that the Defendants have violated the applicable permit limits on visible emissions;

B.     Declare that the Defendants have violated the applicable Michigan State Implementation Plan limits on visible emissions;

C.     Declare that Defendants have violated the applicable permit requirement to install and operate its electrostatic precipitators properly at all times that the units were operating;

D.     Declare that Defendants have violated the applicable Michigan State Implementation Plan requirement to install, maintain, and operate all air-cleaning devices in a satisfactory manner;

E.     Enjoin Defendants from operating the De Young Plant except in complete compliance with permit and State Implementation Plan limits and requirements;

F.     Order the Defendants to immediately comply with the statutory and regulatory requirements cited in this Complaint;

G.     Order the Defendants to remedy their past and ongoing violations by, *inter alia*, requiring the Defendants to install any necessary and appropriate pollution controls or to convert and/or operate the James De Young boilers on natural gas to avoid additional violations and to off-set historic unlawful emissions;

H.      Order the Defendants to take appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Act alleged above;

I.      Order the Defendants to disgorge profits and other benefits that were improperly obtained through, or as a direct result of, the violations set forth herein;

J.      Order the Defendants to pay civil penalties, including a beneficial mitigation project pursuant to 42 U.S.C. § 7604(g)(2) that will reduce pollution in the immediate vicinity of the DeYoung plant, where Sierra Club's members work, live, and recreate and, therefore, improve the air quality that is harming Sierra Club's members;

K.      Order the Defendants to pay Sierra Club's costs of this action, including reasonable attorney fees, pursuant to CAA § 304(d), 42 U.S.C. § 7604(d);

L.      Retain jurisdiction over this action to ensure compliance with the Court's Order; and

M.      Order any other relief that the Court finds is just and equitable.

**ANSWER**:      Defendants deny that Plaintiff is entitled to any recovery or relief whatsoever.

## AFFIRMATIVE DEFENSES

Defendants assert the following non-exclusive defenses in opposition to Plaintiff's claims.  In denominating the defenses as affirmative defenses, Defendants do not thereby assume the burden of proof of such matters.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff lacks standing.

### SECOND AFFIRMATIVE DEFENSE

Each of Plaintiff's purported causes of action is barred by the applicable statutes of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff failed to provide adequate notice of their intent to sue, as required under the Act.

### FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to assert claims not included in its notice of intent to sue, the Court is without jurisdiction to hear those claims.

### FIFTH AFFIRMATIVE DEFENSE

At all relevant times, the De Young Plant has been in compliance with all applicable provisions of the CAA, EPA's implementing regulations, the statutes and regulations of Michigan, and the requirements and conditions of applicable Michigan permits.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's allegations with respect to opacity exceedances related to periods of startup or shutdown are precluded, in whole or in part, based on the applicable startup and shutdown provisions of EPA's implementing regulations, the statutes and regulations of Michigan, or the requirements and conditions of applicable Michigan permits.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's allegations with respect to opacity exceedances related to upset or malfunction are precluded, in whole or in part, based on the applicable upset and malfunction provisions of EPA's implementing regulations, the statutes and regulations of Michigan, or the requirements and conditions of applicable Michigan permits.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's allegations with respect to monitor downtime are precluded based on the exception/excuse provisions in the ROP and the applicable regulations.

### NINTH AFFIRMATIVE DEFENSE

Each of Plaintiff's causes of action is barred by the doctrine of waiver.

### TENTH AFFIRMATIVE DEFENSE

Each of Plaintiff's causes of action is barred by the doctrine of laches.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in part, by operation of CAA § 307(b)(2), 42 U.S.C. § 7607, and not cognizable under CAA § 304(a), 42 U.S.C. § 7604(a), because Plaintiff's allegations regarding monitor downtime constitute an impermissible collateral attack on the De Young Plant's ROP.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, as moot.

## THIRTEENTH AFFIRMATIVE DEFENSE

For all time relevant to the Complaint, the Michigan Department of Environmental Quality has determined that Defendants' compliance with opacity control, monitoring and reporting requirements of applicable permits, statutes and regulations has been acceptable.

## FOURTEENTH AFFIRMATIVE DEFENSE

If the interpretations of the regulations upon which the alleged monitor downtime violations are based are lawful, Defendants were not given fair notice by the applicable regulations, and substantive due process forbids the retroactive imposition on Defendants of Plaintiff's new and vague legal interpretations of the CAA and its implementing regulations.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered the injuries or damages alleged or any other injuries or damages resulting from Defendants' actions.

WHEREFORE, Defendants respectfully request that the Court dismiss with prejudice each of the claims in Plaintiff's Complaint, award costs and attorneys' fees to the extent

permitted by the claims brought by Plaintiff, and award such other relief as it deems just and necessary.

Dated:  August 24, 2011          Respectfully submitted,

                                  /s/ Margrethe K. Kearney
                                  One of the Attorneys for Defendants

                                  Charles M. Denton
                                  BARNES & THORNBURG LLP
                                  171 Monroe Avenue, NW
                                  Suite 1000
                                  Grand Rapids, MI  49503
                                  Telephone: (616) 742-3974
                                  Email: charles.denton@btlaw.com
                                  Atty. #: P33269

                                  Cary R. Perlman
                                  Karl A. Karg
                                  Andrea M. Hogan
                                  Margrethe K. Kearney
                                  LATHAM & WATKINS LLP
                                  233 South Wacker Drive, Ste. 5800
                                  Chicago, Illinois 60606
                                  Telephone: (312) 876-7700
                                  Email: cary.perlman@lw.com
                                        karl.karg@lw.com
                                        andrea.hogan@lw.com
                                        margrethe.kearney@lw.com